IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MAURICE D. H.,[1] | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No. 22-CV-530-MTS |
| | ) |
| MARTIN O'MALLEY,[2] | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Maurice D. H. requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for disability benefits under the Social Security Act. Plaintiff appeals the decision of the Administrative Law Judge ("ALJ") and asserts the Commissioner erred because the ALJ incorrectly determined he was not disabled. For the reasons discussed below, the Court **REVERSES and REMANDS** the Commissioner's decision denying benefits.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such

---

[1] Plaintiff's first and last name was incorrectly listed on the Complaint (Docket No. 2) and has since been corrected throughout the docket. (Docket Nos. 8, 10). The Court finds that Plaintiff's correct name shall appear, when necessary, in this Opinion and Order and on all future pleadings.

[2] Effective December 20, 2023, pursuant to Fed. R. Civ. P. 25(d), Martin O'Malley, Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920. Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied.

At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work.

If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988). "If a determination can be made at any of the

2

steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id*. at 750.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). A court's review is limited to two inquiries: first, whether the correct legal standards were applied; and second, whether the decision was supported by substantial evidence. *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citation omitted). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). A court, however, may not re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Even if a court might have reached a different conclusion, the Commissioner's decision will stand if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

**Background and Procedural History**

On December 8, 2020, Plaintiff filed an application for Title II disability insurance benefits (42 U.S.C. § 401, *et seq.*) under the Social Security Act. (R. 10, 208, 191-97). He alleged an inability to work beginning on January 16, 2020, due to multiple sclerosis ("MS") and allergies. (R. 229, 243). Plaintiff was thirty-eight years old at the time of the ALJ's decision. (R. 36, 229). He is a high school graduate with some college and has past relevant work as an

information technology specialist, computer support specialist, cable television installer, cashier/checker, and security guard. (R. 19, 60-61, 244, 258-65).

Plaintiff's application was denied both initially and upon reconsideration. (R. 113-16, 118-23). At Plaintiff's request, ALJ Dennis LeBlanc conducted an administrative hearing on March 4, 2022. The hearing was held by teleconference pursuant to COVID-19 procedures. (R. 10, 31-66, 124-25, 147-48). ALJ LeBlanc issued a decision on April 22, 2022, denying benefits and finding Plaintiff not disabled. (R. 10-21). Plaintiff sought review by the Appeals Council, which was denied on October 3, 2022. (R. 1-5). As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

Following the five-step sequential process, the ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since January 16, 2020, the alleged onset date. (R. 12). At step two, he found Plaintiff suffered from severe impairments of MS and obstructive sleep apnea. *Id*. The ALJ determined at step three that Plaintiff's impairments did not meet or equal a listed impairment. (R. 14). Based upon his consideration of Plaintiff's subjective allegations, the medical evidence, and the medical source opinion evidence, the ALJ concluded Plaintiff retained "the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a)" with the following additional limitations:

> The claimant is able to lift and/or carry ten pounds occasionally and five pounds frequently. The claimant is able to stand and/or walk two hours in an eight-hour workday, and sit six hours in an eight-hour workday. The claimant is unable to climb. The claimant is able to occasionally balance and stoop. The claimant is unable to kneel, crouch, or crawl. The claimant is able to frequently reach, handle and finger. The claimant must avoid workplace hazards, such as dangerous machinery or unprotected heights.

*Id*.

At step four, the ALJ determined Plaintiff had past relevant work as an information technology specialist, computer support specialist, cable television installer, cashier/checker, and security guard. (R. 19). Based on the testimony of a vocational expert ("VE"), the ALJ concluded Plaintiff could perform his past relevant work as an information technology specialist as generally performed in the national economy. (R. 19, 61-62). Alternatively, the ALJ made a step-five determination that Plaintiff could perform the representative jobs of telephone order clerk, telephone information clerk, and final assembler, all of which he found existed in significant numbers in the national economy. (R. 19-20, 61-62). As a result, the ALJ found Plaintiff had not been under a disability from January 16, 2020, through the date of the decision. (R. 20).

## Errors Alleged for Review

Plaintiff raises two allegations of error in his challenge to the Commissioner's denial of benefits on appeal: (1) the ALJ's findings associated with the RFC assessment are erroneous; and (2) the ALJ's consistency findings are not supported by substantial evidence. Included within his consistency argument, Plaintiff also asserts the ALJ failed to evaluate the opinion of William Butron, M.D. (Docket No. 10 at 6-15). For the reasons discussed herein, the Court finds the ALJ erred in his consistency analysis of Plaintiff's subjective allegations.

## The ALJ's Consistency Determination

Plaintiff argues the ALJ's consistency findings are "conclusory" and that the ALJ failed to properly consider "most of the factors that the regulations require him to consider." (Docket No. 10 at 13-14). He asserts "[t]he ALJ's analysis simply amounted to no analysis at all." *Id*. at 14. The Commissioner counters that "[t]he ALJ extensively and accurately compared Plaintiff's allegations to the medical, non-medical, and medical opinion evidence of record[,]" noting that

5

the ALJ found the prior administrative medical findings "partially persuasive" and then "concluded the evidence did not fully substantiate Plaintiff's allegations of disability." (Docket No. 14 at 11).

> When evaluating a claimant's symptoms, the ALJ uses a two-step process:
>
> First, [the ALJ] must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second, . . . [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]

Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017). As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. § 404.1529(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment other than medication for relief of pain or other symptoms; (vi) any other measures used by the claimant to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *Id*. at *7-8.

Deference must be given to an ALJ's evaluation of a claimant's pain or symptoms, unless there is an indication the ALJ misread the medical evidence as a whole. *See Casias*, 933 F.2d at 801. An ALJ's findings, however, "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). "[S]o long as the ALJ 'sets forth the specific evidence he relies on in evaluating the [consistency of the claimant's subjective complaints],' he need not make a 'formalistic factor-by-factor recitation of the evidence.'" *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012), quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

Thus, the use of conclusory language is "problematic only when it appears 'in the absence of a more thorough analysis.'" *Id*. at 1170, quoting *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004).

The ALJ accurately summarized Plaintiff's testimony in the decision, noting Plaintiff's reports of "difficulty holding onto things, due to numbness in his hands," issues with balance, "swelling and tremors," a "pins and needles sensation" of the right leg, lack of complete feeling in the left leg, worsening insomnia and migraine headaches, and his use of a cane since 2018. (R. 15). He noted Plaintiff's testimony that he could lift twenty to twenty-five pounds using his cane, stand for twenty to thirty minutes before experiencing numbness and pins and needles in his leg, sit for two to three hours, which caused his leg numbness to worsen, and decreased typing speed because of numbness in the hands. *Id*. He also summarized Plaintiff's testimony that depending on his pain, Plaintiff could usually get out of bed in the morning within the first hour of waking, and Plaintiff's activities included using an elliptical once per week for thirty minutes, doing yoga for fifteen minutes three times per week, "basic" cooking, and picking up and vacuuming. *Id*. He further noted Plaintiff's testimony that he could drive "most" days, he left the house to go to the grocery store, pick up his child from school, and visit relatives, but Plaintiff was "down for a week or two" after receiving treatments every six months. (R. 16).

Following his summary of Plaintiff's hearing testimony, the ALJ applied the two-step framework outlined by SSR 16-3p and determined Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id*. These conclusions were followed by a summary of Plaintiff's medical

records, which included references to Plaintiff's diagnoses, an MRI of the brain and cervical spine, infusions for multiple sclerosis, reports of pain in the hands, feet, knees, and right shoulder, reports of numbness and swelling in the hands, reports of paraparesis, fatigue, and the use of a cane. (R. 16-18). He noted several examination findings in the decision, including several normal findings, but on other occasions he pointed out abnormal findings, which included "diminished sensory" findings, decreased grip strength on both sides, "mild spastic paraparesis," and slowed gait with "a bit" of spastic ataxia. *Id*.

On three occasions in the decision, the ALJ concluded the paragraphs summarizing the medical evidence by including statements that the examination findings did not support the alleged severity of Plaintiff's complaints or impairments. (R. 16, 17, 18). He also noted the examination findings did not support additional functional limitations that would contradict the assessed RFC (R. 16, 18), the evidence was not inconsistent with the RFC assessment (R. 17), and the objective testing did not "reveal any abnormality that would contradict the findings contained herein." (R. 18). After briefly discussing the prior administrative medical findings and deeming them "partially persuasive," the ALJ reached the following conclusion:

> The [ALJ] does not discount all of the claimant's complaints; however, the evidence within the record demonstrates that even though the claimant does have medically determinable impairments, they are not severe enough to prevent the claimant from participating in substantial gainful activity, given the [RFC] set forth above. Given the objective medical evidence in the record, the [ALJ] finds that the claimant's [RFC] is reasonable, and that the claimant could function within those limitations without experiencing significant exacerbation of his symptoms.

(R. 19).

Although the ALJ discussed Plaintiff's testimony, the medical evidence, and the prior administrative medical findings by the state agency physicians in the decision, and seemingly relied upon inconsistencies between Plaintiff's subjective complaints and the examination

8

findings, he did not specifically discuss any of the factors set forth in SSR 16-3p, nor did he expressly explain how the record evidence was consistent or inconsistent with Plaintiff's subjective allegations. (R. 15-19).[3] The ALJ's findings are conclusory and fail to meet the requirements of SSR 16-3p, as they are not "closely and affirmatively" linked to record evidence or "clearly articulated" to allow for meaningful review by the Court. *See* SSR 16-3p, 2017 WL 5180304, at *8 ("We will explain which of an individual's symptoms we found consistent or inconsistent with the evidence in his or her record and how our evaluation of the individual's symptoms led to our conclusions."); *id*. at *9 ("The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."); *see also Malakowsky v. Barnhart*, 66 Fed. Appx. 756, 758 (10th Cir. 2003) (finding ALJ's explanation that "there was minimal objective evidence to support claimant's allegations and that the medical evidence was not consistent with an impairment that might reasonably limit claimant's activities" was conclusory when the ALJ failed "to point to specific evidence in the record contradicting or undermining claimant's assertions").

As acknowledged by the Tenth Circuit Court of Appeals and other Oklahoma district courts, the mere recitation of evidence with no comment or adequate explanation as to how the evidence is consistent or inconsistent with Plaintiff's subjective allegations constitutes reversible

---

[3] The Commissioner offers that the ALJ determined the prior administrative medical findings were "partially persuasive," and the findings included a review of "representative medical records documenting no significant worsening in Plaintiff's multiple sclerosis since over a year prior to the alleged onset date of disability (when he was performing his past relevant work as an IT Specialist full-time at the level of substantial gainful activity)[.]" (Docket No. 14 at 11). The Court, however, cannot create or adopt *post-hoc* rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself. *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007).

error because it does not allow for meaningful court review. *See Brownrigg v. Berryhill*, 688 Fed. Appx. 542, 546 (10th Cir. 2017) ("Because the ALJ did not . . . sufficiently articulate his reasoning, [the Court] cannot conduct a meaningful review of the pain assessment."); *Roxanna L. H. v. Berryhill*, 2019 WL 1083564, at *5 (N.D. Okla. Mar. 7, 2019) (relying on *Brownrigg* and finding reversible error where ALJ recited evidence without comment or adequate explanation as to how the evidence was consistent or inconsistent with Plaintiff's allegations of pain); *Lee J. v. Saul*, 2020 WL 6136235, at *3 (N.D. Okla. Oct. 19, 2020) (reversing and remanding case for the ALJ to provide an adequate explanation for the rationale of his consistency findings and to adequately consider the appropriate factors set forth by SSR 16-3p); *Harris v. Kijakazi*, 2022 WL 4543224, at *4 (W.D. Okla. Sept. 28, 2022) (relying on *Brownrigg* and reversing and remanding for a proper analysis under SSR 16-3p). The Court therefore finds that remand of this matter is appropriate for an ALJ to make express findings regarding Plaintiff's subjective allegations in accordance with his duties under SSR 16-3p.

## The Remaining Allegations of Error

Plaintiff's remaining allegations of error include that the ALJ's RFC assessment did not comply with the analysis required by *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996) and the ALJ failed to evaluate the opinion of Dr. Butron. Because Plaintiff's allegations regarding the RFC are directly affected by the ALJ's failure to perform a proper consistency analysis, the Court declines to consider this allegation of error. *See Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) ("Since the purpose of the credibility evaluation is to help the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are inherently intertwined.").

However, even though a court should normally decline consideration of any allegation of error that will be affected "by the ALJ's treatment of [the] case on remand[,]" *Watkins v.*

*Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003), the Court notes the ALJ was not required (and will not be on remand) to consider Dr. Butron's statement that Plaintiff was "unable to work and is fully disabled" because of his "neurologic conditions." (R. 412). The regulations specifically provide that an ALJ is not required to "provide any analysis" regarding his consideration of statements about whether a claimant is or is not disabled, able to work, or able to perform regular or continuing work "in [the] determination or decision, even under § 404.1520c[.]" 20 C.F.R. § 404.1520b(c)(3)(i). Such statements address issues reserved to the Commissioner and are considered "inherently neither valuable nor persuasive" to the disability determination. *Id*. at § 404.1520b(c)(3).

## Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **REVERSED and REMANDED** for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED this 4th day of January, 2024.

_____
MARK T. STEELE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT